**Harvey ROWE, Appellant,**

v.

**KING–DARBY COALS, INC., et al.,
Appellees.**

Court of Appeals of Kentucky.

Feb. 12, 1971.

Cawood Smith, Harlan, for appellant.

William A. Rice, Harlan, Martin Glazer, Dept. of Labor, Frankfort, for appellees.

VANCE, Commissioner.

The Workmen's Compensation Board dismissed Harvey Rowe's claim for compensation. From a judgment of the circuit court upholding the dismissal, he appeals.

It is conceded by all parties that the appellant is disabled from performing the ordinary work of a coal minor because of silicosis. The question involved on this appeal relates to his last exposure to the hazard of that disease.

The appellant has worked for coal mining companies for many years, his last employment being with the appellee, King-Darby Coals, Inc. from June 1963 to January 1965.

The parties stipulated that appellant has worked inside the coal mines for a period of approximately 50 years and throughout said period of time was exposed to various dusts, including rock dust, coal dust, sandstone dust, and other silica-containing dust.

Appellant testified that when he worked for King-Darby Coals, Inc. he looked as if he had been in a soot bank at the end of every shift and that he necessarily breathed some dust every shift he worked.

It was shown that appellant was injured in 1945 and did not work at all between 1946 and 1956. In 1956 he returned to work as a night watchman at a coal company and from that time onward his entire employment at coal mining companies consisted of work as a night watchman at mines which were not operated on the night shift. He admitted his exposure to dust was minimal.

With reference to his exposure to dust during his employment with King-Darby Coals the appellant testified as follows:

"* * * 59. And you were working as a night watchman when you went to King-Darby Coals, in June of 1963, is that right?

A. Yes sir.

60. Were you exposed to any dust while you worked at King-Darby?

A. Yes sir, up in the tipple it was full of dust and I had to go through that tipple all the time.

61. Was that mine operating then?

A. Yes sir.

62. And they worked at night?

A. No sir.

63. How were you exposed to the dust there?

A. The tipple was full of dust and I had to go through there and watch the conveyor to see it didn't get on fire.

64. Well, the conveyor wasn't moving, was it?

A. No sir.

65. Everything was down and still?

A. Yes sir, except when the wind would blow.

66. In other words, when the wind blew you got some dust?

A. Yes sir.

67. Are you telling us that you got dust at King-Darby from the dust conditions that stayed there and was stirred up from the wind, when the wind blew?

A. Yes sir.

*    *    *    *    *    *

76. And when the wind was blowing you were exposed to dust there, is that right?

A. Yes sir.

77. You are not saying that wind blew all the time, are you?

A. No sir.

\*   \*   \*   \*   \*   \*

80. Now, you wouldn't say you were exposed to this dust every shift, would you?

A. Well, you were exposed every shift, you see, I had to take a broom and I had to sweep out the place sometimes to have a place to sit down when it was storming.

81. But that was in bad weather, wasn't it?

A. Yes sir.

82. Was it always bad weather during the time you worked there?

A. No sir.

83. What I am trying to find out or trying to get at, Mr. Rowe, is were you exposed at all times or just during the bad weather?

A. The bad weather was the times when I got most of the dust.

84. Even if the wind wasn't blowing?

A. Yes sir.

85. Where did you get the dust from?

A. From sweeping.

86. If the wind was blowing you were not sweeping were you?

A. Yes, I had to sweep then too.

87. So, you swept the full shift?

A. No sir not the full shift.

88. Well, how long would you sweep during the shift?

A. About fifteen minutes.

89. How long was the shift?

A. Eight hours.

90. And during seven hours and forty-five minutes of the shift then you were not exposed to the dust if the wind was not blowing, were you?

A. No sir.

91. And you don't know how much of the time the wind was blowing during each shift, do you?

A. No sir.

92. And the only work you have done, as I understand it, since 1946 is night watchman work from 1956 until you last worked at King-Darby Coals, Inc., is that right?

A. Yes sir."

The board found that appellant was not exposed to the hazards of the disease of silicosis in his employment with King-Darby Coals, Inc., or with any other employer in the State of Kentucky since 1946. The burden of persuading the Board rested with the appellant. The decision of the Board can be overturned by the court only if the evidence of his exposure was so strong as to compel a finding in his favor and so persuasive that it was clearly unreasonable for the Board not to be convinced by it. Semet-Solvey Div. of A. C. Corp. v. Workmen's Compensation Board, Ky., 410 S.W.2d 405 (1966).

Evidence to sustain the issue of exposure to hazards of disease must be of substance and of consequence carrying the quality of proof and having fitness to produce conviction. Bartley & Senters Coal Company v. Hall, Ky., 399 S.W.2d 696 (1965.)

Appellant claims his burden was met by reason of the stipulation hereinabove set out and by his own uncontradicted testimony. The stipulation did not show that appellant had ever worked inside of the King-Darby Coal Company mine and his own testimony established that he did not work as a miner. He was a night watchman and the mine was inoperative during the time he worked. His exposure to dust was limited to such dust as the wind blew about him and such dust as he stirred up *sweeping out the place sometimes to have a place to sit down.*

We do not believe that evidence of this character compels a finding in his favor nor is it so persuasive that it was unreasonable for the Board not to be convinced by it.

Appellant argues that Bartley & Senters Coal Company v. Hall, supra, is not applicable since it involved a construction of KRS 342.316(12) which required proof of *injurious* exposure where as this case involves the construction of KRS 342.316 (13) (a) which only required proof of exposure (as contrasted with injurious exposure) to the hazards of the disease.

An injurious exposure has been defined by statute as an exposure to an occupational hazard which would, independent of any other cause whatsoever, produce or cause the disease. KRS 342.316(1) (b). The injurious exposure referred to in KRS 342.-316(12) has been interpreted to be such exposure as could cause disease over some indefinite period of time. Childers v. Hackney's Creek Coal Company, Ky., 337 S.W. 2d 680 (1960).

■ We think that no less showing of exposure is contemplated by KRS 342.316 (13) (a) because in each instance there is required to be shown an exposure to the hazard of a disease. By definition a hazard is a risk, danger, or chance and if the exposure involved is so slight or casual that when continued over an indefinite period of time, it would not cause or produce the disease, then there has been no exposure to a hazard.

The judgment is affirmed.

All concur.