ISLAND CREEK COAL
COMPANY, Appellant,

v.

Larry D. BEALE, Director of the Special
Fund; Hugh Gish, Jr.; and Workers'
Compensation Board, Appellees.

No. 90–SC–473–WC.

Supreme Court of Kentucky.

Dec. 27, 1990.

Case Ordered Published by Supreme
Court Feb. 8, 1991.

William P. Swain, William M. Newman,
Jr., Louisville, for Island Creek Coal Co.

David Randall Allen, Louisville, for Larry Beale, Dir. of Special Fund.

A.V. Conway, II, Hartford, for Hugh
Gish, Jr.

## OPINION OF THE COURT

In this workers' compensation case, claimant filed for benefits alleging that he was permanently, totally occupationally disabled as a result of contracting the occupational disease of coal workers' pneumoconiosis occurring on or about October 11, 1986. The Administrative Law Judge (ALJ), while noting that the medical evidence was closely divided on whether the claimant had contracted pneumoconiosis, found that claimant sustained a 50% occupational disability and awarded benefits. The ALJ apportioned liability 60% to the employer and 40% to the Special Fund based upon a single exposure. The defendant-employer appealed to the Workers' Compensation Board on the issue of apportionment, and the ALJ's determination on that point was reversed. On appeal to the Court of Appeals, the Board was reversed. We affirm.

The sole issue presented is the proper apportionment of liability between the employer and the Special Fund per KRS 342.-316(10)(a) on the basis of a single exposure or a multiple exposure. At the time claimant filed for benefits, he had been employed as an underground coal miner for

Island Creek Coal Company from 1969 until 1986. The claimant had a varied employment history prior to 1969, all outside the coal mining industry. Claimant's employment as a truck driver from 1959 until 1964 at the construction site of a TVA power plant is the only alleged previous exposure to hazards which could cause pneumoconiosis.

KRS 342.316(10)(a) provides in pertinent part:

"... the employer liable for compensation for occupational disease ... shall be the employer in whose employment the employee was last exposed to the hazard of such occupational disease. In those cases where disability or death are not conclusively proven to be the result of such last exposure ... seventy-five percent (75%) shall be paid by the special fund and twenty-five percent (25%) by the employer.... In all other cases of occupational disease ... the compensation for disability ... shall be paid jointly by the employer and the special fund, and the employer shall be liable for sixty percent (60%) of the compensation due and the special fund shall be liable for forty percent (40%) of the compensation due."

The ALJ made the finding that Island Creek Coal Company was the only employer in whose employment the claimant was exposed to the hazards of coal workers' pneumoconiosis, and that his disability had therefore been conclusively proven to be the result of his exposure, thus resulting in a 60%/40% apportionment. The board reversed and apportioned liability 75%/25% on the grounds that the evidence required a finding of multiple exposure due to claimant's previous employment with TVA and his exposure there to lime and rock dust. The Court of Appeals reversed the Board's apportionment stating that the evidence before the Board was not of such an overwhelming nature to compel reversal of the ALJ.

█ The question becomes, then, whether the evidence substantially supported the finding by the ALJ or whether it compelled the opposite result. The burden of proof in cases of apportionment was stated in *Stovall v. Mullen*, Ky.App., 674 S.W.2d 526 (1984). Although the burden is on the Special Fund to prove that an employee's disability is solely the result of exposure at his last place of employment, "... until there is some evidence that the employee sustained an exposure at more than one place of employment, the special fund's burden to prove conclusively which exposure caused the disability does not arise...." *Supra* at 528. Thus, it was incumbent upon the employer to first establish that the employee sustained an exposure during his employment with TVA.

█ Claimant testified that he worked for TVA as a truck driver for five years. When asked whether he was exposed to either coal or rock dust at the TVA construction site, claimant answered:

"A. Lime dust, we was in and out of the basement of that thing when it was being drilled, and they got the coal out of it too, but we was in dust all the time on the construction job.

"Q. What did you look like when you left work during the years you worked for TVA?

"A. Well, some days you was fairly clean, and some days you looked like you'd been in normal dirt dust and lime dust where they were drilling in the lime rock."

This testimony represents the extent to which the record reveals the amount or frequency of any exposure while at TVA.

Thirteen physicians testified in this action. The Board relied heavily upon the testimony of Dr. Robert W. Penman in reversing the ALJ. Dr. Penman's initial recitation of claimant's work history consisted solely of 18 years with Island Creek Coal Company. Dr. Penman testified that he attributed claimant's pneumoconiosis to 18 years of underground coal mining. Counsel for Island Creek Coal Company informed Dr. Penman on cross-examination that claimant had previously worked for TVA and was thus exposed to "respirable dusts." When asked whether this exposure would lead to development of pneumo-

coniosis, Dr. Penman answered in the affirmative.

The majority of testifying physicians did not mention knowledge of claimant's prior work history. Dr. Penman did not seem to be aware of claimant's work history with TVA until counsel mentioned it on cross-examination. At least two other physicians had some knowledge of claimant's prior work history. Dr. Neal Calhoun stated that claimant worked on a construction site after W.W.II, and Dr. Sam H. Traugher stated that claimant worked for a power plant from 1959 to 1965. Both of these physicians attributed claimant's pneumoconiosis to his exposure to coal dust in the mining operation.

The Board stated that since no other physician was given the same information as Dr. Penman, no one contradicted his testimony that claimant's exposure to dust at the TVA plant would be regarded as a contributing factor. The only information revealed by the record that was afforded Dr. Penman was a proposition by counsel that claimant had been exposed to respirable dusts. There is no evidence that the amount, concentration, or duration of the alleged exposure was evaluated by any testifying physician. We do not believe that this evidence compelled the ALJ to apportion the award based upon a multiple exposure. Although it is argued that the Special Fund did not meet its burden of proving conclusively that claimant's occupational disease was due to his last exposure with Island Creek Coal Company, this burden never arose absent a showing by Island Creek Coal Company that there was a previous exposure with TVA.

There is some dispute as to whether the last employer must show a previous "injurious exposure," KRS 342.620(4), or merely an exposure. In *Stovall v. Mullen*, Ky. App., 674 S.W.2d 526 (1984), the court stated that the evidence necessary to prove an employee's prior exposure is no less than that required to prove his last exposure. "Evidence to sustain the issue of exposure to hazards of disease must be of substance and of consequence carrying the quality of proof and having fitness to produce convic-

tion." *Rowe v. King–Darby Coals, Inc.,* Ky., 463 S.W.2d 342, 344 (1971). In *Rowe* the Court specifically addressed the argument that KRS 342.316(10)(a) [then KRS 342.316(13)(a)] requires a showing of an "exposure" rather than an "injurious exposure." The Court noted that an injurious exposure is defined by statute as an exposure to an occupational hazard which would, independently of any other cause whatsoever, produce or cause the disease. KRS 342.620(4) [now KRS 342.0011(4)] specifically makes applicable that definition to KRS 342.316. Regardless of the fact that the word "injurious" is not included in KRS 342.316(10)(a) "no less showing of exposure is contemplated by KRS 342.316(13)(a) [now (10)(a)] because in each instance there is required to be shown an exposure to the hazard of a disease." *Rowe* at 345.

Island Creek Coal Company argues that if it was required to show a previous injurious exposure, it met its burden. In support, it relies upon *Yocum v. Eastern Coal Corp.,* Ky., 523 S.W.2d 882 (1975), where the claimant worked for 36 years as a coal miner for the defendant-employer with the exception of two days when he did the same type of work for another mining company. The dispute became whether two days' employment was of sufficient duration to constitute a previous exposure. The court held that the duration of a previous employment is immaterial if there is a reasonable probability that his previous exposure was to some degree a contributing factor.

Neither party here questions whether the duration of claimant's previous employment was sufficient, but whether there was an exposure to hazards during the previous employment that with reasonable probability contributed to the disease. The evidence on this issue was not so overwhelming to compel a reversal of the ALJ by the Board.

The Opinion of the Court of Appeals is affirmed.

All concur.